UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DREGER, ROBERT VOGEL,
CARL PETERS, ALLAN PYNE
SCOTT HAY, BRYAN LERTOLA,
DARRIN DENIS and AARON BURNSWORTH                     Case No. 10-12725

      Plaintiffs,                                          HON. AVERN COHN

v.

NAGY READY MIX, INC. a Michigan
domestic profit corporation,
PARAGON READY MIX, INC. a
Michigan domestic profit corporation,
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL NO. 247

      Defendants.
_____/

## <u>MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

### I.      Introduction

This is a labor dispute under §301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §185, alleging breach of a collective bargaining agreement (CBA) and violation of the duty of fair representation against defendants Nagy Ready Mix, Inc. (Nagy), Paragon Ready Mix, Inc. (Paragon), International Brotherhood of Teamsters Local 247 (Local) (collectively, defendants), and International Brotherhood of Teamsters (IBT).  Plaintiffs Dreger, Vogel, Peters, Pyne, Hay, Lertola, Denis, and Burnsworth (collectively, plaintiffs) are former employees of Nagy.  Defendants generally are parties involved in a shutdown of Nagy and subsequent incorporation of Paragon: events which led to the present action.

On July 9, 2010, plaintiffs filed a complaint alleging breach of the Collective Bargaining Agreement (CBA) between Nagy and the Local, of which plaintiffs were members, and violation of duty of fair representation by the Local.  On November 15, 2010, plaintiffs and IBT reached a settlement and IBT was dismissed from the case without prejudice.  Subsequently, plaintiffs added a breach of contract claim against Nagy.

Now before the Court are defendants' motions for summary judgment.  For the reasons that follow the motions will be granted.

## II. Background

In November 2009, Paragon filed articles of incorporation for a ready mix concrete corporation.  In December, 2009, Nagy shut down its operations and gave permanent layoff notices to its employees, including plaintiffs.  In December, 2009, while on-site at Nagy to turn in their uniforms and equipment, the laid off Nagy employees received applications from Trillium, a temporary hiring service, to work for Paragon.  A former Nagy manager distributed the employment applications.  On January 4, 2010, Paragon began operating at the former Nagy site using Nagy equipment and servicing Nagy customers.  On January 6, 2010, eight former Nagy employees began working as drivers for Paragon.  On January 11, 2010, plaintiff Dreger filed a grievance with the Local on grounds that Nagy created Paragon as an alter ego corporation and asking the Local to "reverse the decision to set up alter ego company" Plaintiffs contend that the Local failed to act on the grievance in a timely fashion and subsequent measures were designed to cover up the failure to pursue the grievance.

On February 3, 2010, Local Vice President Thomas Ziembovic (Ziembovic) communicated the Local's position on the Nagy-Paragon situation to the Local's attorney Robert Buzaitis (Buzaitis). Ziembovic stated in a letter, "[i]t is the Local Union's position that the charge filed is premature" because "a labor agreement may be reached with Paragon Ready Mix, Inc." Ziembovic concluded by stating that the Local "d[id] not support the charge at this time." Several of the plaintiffs also filed a complaint with the National Labor Relations Board. On March 17, 2010 Ziembovic invited former Nagy employees working at Paragon to a meeting. The plaintiffs, who did not accept a position at Paragon, were not invited to or notified of the meeting. This meeting is referred to by the parties as the "ghost meeting."

On March 25, 2010, Ziembovic called a Local membership meeting. Plaintiffs attended this meeting. That night Ziembovic told members that they had to vote on terminating the Nagy CBA in order for a new CBA with Paragon to be reached. There were two parts to this arrangement. The first was to execute a closing agreement with Nagy and the second to enter into a CBA with Paragon. Nagy wanted a closing agreement with the Local before a new labor agreement with Paragon. The choice presented to the members was: make a deal or move ahead with the grievance process.

Plaintiffs moved to table the vote because they had not received proper notice. Specifically, they did not know they would have vote on whether to surrender their right to pursue a grievance against Nagy/Paragon. According to plaintiffs, Ziembovic ignored the motion and proceeded with the vote, which passed by a majority. Plaintiffs' now argue that the vote was void because all but one voter was ineligible. All members,

3

save one, accepted an honorable withdrawal card.  Under local bylaws a member on an honorable withdrawal card cannot vote.

On March 26, 2010, Paragon sent probationary employment offers to plaintiffs. On March 29, 2010, Ziembovic provided an update to Buzaitis on the Local's position- that the Local members voted "not to pursue the 'alter ego' argument and to attempt to obtain a labor agreement with Paragon Ready Mix Company."  On April 14, 2010, a collective bargaining agreement was reached between the Local and Paragon.  This agreement provided for a two tier pay structure.  Employee's with more than ten years of service at Nagy were hired with a starting hourly rate of $18 per hour while less senior employees started at $15 per hour.   Plaintiffs did not accept positions with Paragon.

### III. Legal Standard

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." Hedrick, 355 F.3d at 451 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 453 (6th Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986)); Fed. R. Civ. P. 56(e).  The nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson, 477 U.S. 242, 252.   Thus, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  *See* Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); *see also* Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."   Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).   Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### IV. Discussion

#### A.  Duty of Fair Representation

A union owes its members a duty of fair representation. This means the union must represent "all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171 (1967)(citing Humphrey v. Moore, 375 U.S. 335, 342 (1964). Plaintiffs' assert generally that the Local dealt with their grievance arbitrarily and in bad faith. An examination of what conduct amounts to arbitrary, discriminatory, or bad faith is necessary.

### 1.  Arbitrary

A union breaches its duty of fair representation if its treatment of its members is arbitrary. This is a high bar to meet. It requires the union's action to be "so far outside a wide range of reasonableness as to be irrational" "[m]ere negligence on the part of a union does not satisfy this requirement." Garrison v. Cassens Transp. Co., 334 F.3d 528 (6th Cir. 2003). Arbitrary conduct includes the failure of the union to complete "basic and required steps" on behalf of its members. Vencl v. Int'l Union of Operating Eng'r, Local 18, 137 F.3d 420 (6th Cir. 1998). A basic and required step is the timely filing of a grievance. Id. at 426; see also Black v. Ryder/P.I.E. Nationwide, Inc. 15 F.3d 573 (6th Cir. 1994).

First, plaintiffs assert that the Local failed to file a grievance in response to Nagy's rebirth in the form of Paragon. Second, after plaintiffs initiated the grievance process the Local failed to follow through and/or allowed filing deadlines to lapse. Plaintiffs' argue this failure qualifies as arbitrary conduct under Ruzicka v. General Motors Corp., 523 F.2d 306 (6th Cir. 1975) and amounts to unfair representation.

In <u>Ruzicka</u>, a union member was discharged from GM and filed a grievance with his union. The union did not pursue his grievance despite asking for and receiving two extensions. A trial determined that the failure to file the grievance was negligent but not willful. The district court held negligence did not amount to a breach of fair representation. The Sixth Circuit reversed and held that the failure to pursue plaintiff's claim through the grievance process, absent justification or excuse and unrelated to the merits of the claim, amounted to unfair representation. <u>Id</u>. at 310.

Defendants contend that the decision not to pursue plaintiffs' grievance was deliberate and strategic. The union members voted in favor of trying to make a deal with defendants rather than pursue litigation. Defendants point to the transcript of the March 25, 2010 union meeting to support this claim. Plaintiffs do not cite to or reference any evidence to indicate that the failure to follow through with the grievance process was negligent. Neither do the plaintiffs offer any evidence to controvert defendants' position that the decision was strategic.

<u>Ruzicka</u> does not apply to the present facts. The failure to pursue the grievance was not based in negligence or lacking justification. The Local, rightly or wrongly, sought to make a deal with the defendants. The union does not have an obligation to pursue every grievance. <u>Vaca</u>, 386 U.S. at 191. The Local's conduct was not arbitrary.

## 2. Discriminatory

A union breaches its duty of fair representation if its actions are discriminatory toward its members. A union's actions are improperly discriminatory if they are "intentional, severe, and unrelated to legitimate union objectives" <u>Bowerman v. Int'l Union, United Auto., Aerospace and Agric. Implement</u>, 646 F.3d 360 (6th Cir.

2011)(quoting Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 301 (1971)).  Plaintiffs contend that creating two pay classes of employees based on length of service was discriminatory. This distinction does not rise to the level of discrimination. The existence of distinctions between employees or classes of employees is "inevitable" and will not void an agreement. Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). Plaintiffs advance no probative evidence to support their claim of discrimination.

### 3.  Bad Faith

Actions taken in bad faith can breach the duty of fair representation.  A union's actions are in bad faith if made with improper intent or motive.  Bowerman, supra; Williamson v. Lear Corp., 183 Fed. Appx. 497, 505 (6th Cir. 2005).  Plaintiffs contend that the failure to follow through with the grievance process is itself evidence of bad faith.  Plaintiffs advance no evidence to support this contention. The decision whether to pursue a deal or litigate was strategic.

### a.  Ghost Meeting

Next, plaintiffs assert that the so called "ghost meeting" of March 17, 2010 was evidence of bad faith and dishonesty.  The "ghost meeting" occurred before the March 25, 2010 meeting and plaintiffs say it was used by Ziembovic to garner support for a deal with Nagy/Paragon. Only former Nagy employees signed up with Paragon attended.  Plaintiffs, who were not signed up with Paragon, were not invited.  Plaintiffs point to this secret meeting as bad faith conduct, dishonesty and deceit.

Even if every fact is as plaintiffs allege: the Local deliberately excluded them from the meeting and its purpose was to garner support for pursuing a closing agreement

with Nagy/ new CBA with Paragon, there is still nothing that demonstrates a triable issue of bad faith; the Local's plan was to garner support for a deal with Nagy/Paragon. This is a legitimate union objective.   Plaintiffs' exclusion from the meeting was poor protocol but bad etiquette is not bad faith.

### b.  March 25, 2010 Union Meeting

### i.  Lack of Notice

Local called a meeting on March 25, 2010.  At the meeting the former employees of Nagy voted to make a deal with Nagy/Paragon.   Plaintiffs contend that there was improper notice of the meeting and agenda, failure to follow meeting procedure, and that all voters, save one, were ineligible to cast a ballot.  Further, that these deficiencies deprived plaintiffs of a meaningful right to vote on whether to make a deal or pursue the grievance process.

Plaintiffs assert that the procedures employed before and during the March 25, 2010 meeting violate the Labor-Management Reporting and Disclosure Act of 1959. §411(a)(1)(LMRDA). Specifically, insufficient notice of the meeting was given to Local members by Ziembovic.  Plaintiffs cite to a district court case from Illinois to support their conclusion that lack of proper notice when voting on a contract violates LMRDA. §422(a)(1): Sako v. Teamsters Local 705, 1987 WL 10981 (N.D. Ill. 1987). Plaintiff also cites to a Sixth Circuit case that suggests that a violation of LMRDA can be the basis of a fair representation claim.  Brown v. Int'l Broth. Of Elec. Workers, Local Union No. 58 AFL-CIO, 936 F.2d 251 (6th Cir. 1991).

Brown explains that a violation of LMRDA can be the basis for a breach of the duty of fair representation, so long as the breach involves discriminatory or irrational

9

conduct. Brown, 936 F.2d at 255. The decision also explains that "a violation of the Act in and of itself is not enough to prove a breach of the duty of fair representation." Id.

None of the irregularities surrounding the March 25, 2010 meeting rise to the level or arbitrary, discriminatory, or bad faith. If there were procedural errors at the meeting they did not impede the meaningful participation of the plaintiffs.

### ii. Voter Ineligibility

Plaintiffs' next contend that the vote at the March 25, 2010 meeting was void because all but one of the workers present at the meeting were ineligible to vote under the Local's bylaws. Under the Local's bylaws a member on an honorable withdrawal card cannot vote or hold office. If the March 25, 2010 decision was rescinded and a new vote called after the workers complied with Local bylaws there is no indication that the outcome would be different. Further, even if this was a procedural error it was not prejudicial because plaintiffs were not eligible to vote either. It seems factions formed long before this meeting and the Local's members were well aware of the decision they faced. Finally, nothing in the record suggests the decision to hold this meeting or the procedures employed were irrational, discriminatory, or inspired by improper motive.

The case against the Local is ultimately a disagreement about the wisdom (and perhaps courage) of the union's choices; but a disagreement is not a denial of the duty of fair representation.

### B. Breach of Collective Bargaining Agreement

A successful hybrid suit under §301 of the Labor Management Relations Act requires both a breach of the duty of fair representation by the union and a breach of the collective bargaining agreement by the employer. 29 U.S.C. §185; Black v. Ryder/

P.I.E. Nationwide, Inc. 15 F.3d 573 (6th Cir. 1994) Because the Court finds there was no violation of the duty of fair representation the breach of the CBA by Nagy/Paragon will not be considered.

### C. Breach of Contract

Plaintiffs claim breach of contract claim against Nagy based on its breach of the CBA. The Supreme Court has considered the issue of parallel claims to a §301 suit. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985). Allis-Chalmers dealt with a tort claim against an employer in the same proceeding and arising out of the same conduct as a claim under §301. The rational of the opinion applies to the present facts.

> We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), or dismissed as pre-empted by federal labor-contract law. This complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, Republic Steel Corp. v. Maddox, 379 U.S., at 652, 85 S.Ct., at 616, or dismissed as pre-empted by § 301.

Plaintiffs cannot maintain breach of contract claim arising from the CBA against defendants.

### V. Conclusion

Defendants' motions to dismiss are **GRANTED**, the case is **DISMISSED**.

SO ORDERED.

  S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  October 7, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 7, 2011, by electronic and/or ordinary mail.

 S/Felicia Moses for Julie Owens
Case Manager, (313) 234-5160